HARRY J. HUTCHINS, Doing Business under the Name and Style of HUTCHINS MARINE LAUNDRY, Plaintiff, *v.* THE DEPARTMENT OF LABOR OF THE STATE OF NEW YORK and FRIEDA S. MILLER, as the Industrial Commissioner of the State of New York, Defendants.

Supreme Court, Erie County, March 30, 1940.

*Anthony J. Contiguglia,* for the plaintiff.

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor-General,* and *John C. Crary, Jr., Assistant Attorney-General,* of counsel], for the defendants.

DESMOND, J.    Plaintiff, a laundry owner in Buffalo, brings this suit in the form prescribed by section 111 of the Labor Law to review the reasonableness of a determination of the Board of Standards and Appeals.    The complaint alleges the unreasonableness and unconstitutionality of an order made by the Industrial Commissioner and later reviewed, on this plaintiff's petition (Labor Law, § 110), and upheld, by the Board of Standards and Appeals. The order, known as Mandatory Order No. 1 of the Industrial Commissioner (effective Aug. 22, 1938), requires laundry owners in Zone B, including the city of Buffalo, to pay their women and minor employees minimum hourly wages as follows: Thirty-three cents from January 1, 1939, to July 1, 1939; thirty-four cents from July 2, 1939, to December 30, 1939, and thirty-five cents thereafter, with time and a half rates for every hour beyond forty-five in any week.  Order No. 1 goes on to require — and it is this requirement that plaintiff attacks here — that in Zone B there shall be, for every such employee employed at all in a given week, a minimum *weekly* wage of thirteen dollars and twenty cents from January 1, 1939, to July 1, 1939; thirteen dollars and sixty cents from July 2, 1939, to December 30, 1939; and fourteen dollars thereafter.   Thus the order as now effective commands plaintiff, a laundry owner in Zone B, to pay each of his women and minor workers fourteen dollars as a minimum wage for every week in which such worker works.   This latter part of the order, says plaintiff, is invalid because the Legislature, in article 19 of the Labor Law, headed " Minimum Wage Standards for Women and Minors," did not, he contends, empower the Commissioner to fix a " guaranteed " weekly wage as distinguished from a minimum hourly wage.   Further, he says, if article 19 be so construed as to authorize such an order, then article 19, so construed, and Mandatory Order No. 1 are unconstitutional and forbidden by the due process clauses of the Federal Constitution (Fourteenth Amendt.) and the State Constitution (Art. 1, § 6).   For Mandatory Order No. 1, says plaintiff, and likewise article 19, if it authorizes such an order, take plaintiff's property without compensation in that they force him to pay his women and minor workers for time during which they do no work because he has no work for them to do.

The parties have stipulated that the case be tried on the proceedings before the Industrial Commissioner and the Board of Standards and Appeals, which proceedings they have filed with me for that purpose.   There is no issue of fact, so far as I can see, and the question of law is clearly and simply put: Is such an order lawful and enforcible?   Plaintiff does not attack the constitutionality of the Minimum Wage Law (Labor Law, art. 19) itself, as

indeed he could not since *West Coast Hotel Co.* v. *Parrish* (300 U. S. 379). He does not claim that the Commissioner failed to follow the somewhat elaborate requirements of the statute as to investigation, the convening of a wage board, the appointment of its members, the gathering and submission of data, the report and recommendations of the wage board, public hearings on notice, the issuance of a directory order, and, finally, the issuance of a mandatory order after further hearings. (Labor Law, §§ 553, 554, 556, 557, 559.) Nor does he question the reasonableness of the *hourly* rate fixed nor the data supporting it. He does not assert, as public utility companies do in rate cases, that a particular rate imposed on his individual business concern is arbitrary and confiscatory as to him. It is the illegality of any mandated weekly " guaranteed " wage that he urges on us, and it is the legality of such a wage provision that the Industrial Commission defends in this suit.

We consider first the contention of plaintiff that that part of Mandatory Order No. 1 which fixes a minimum weekly wage is not authorized by the provisions of article 19 of the Labor Law. Nowhere in that article does the Legislature say that minimum wages are to be fixed by the hour, day, week, or otherwise, and plaintiff in his brief seems to admit that in a proper case the wage board could fix " basic rates or standards of wages " by the week as well as by the hour or day. But, he insists, Mandatory Order No. 1 decrees a " guaranteed minimum weekly wage " for his workers, and this, he says, is not within the intent of the statute. Of course, in a sense the order does fix a " guaranteed " wage since its enforcement would necessarily result in a situation where every worker who began work at the beginning of any week in plaintiff's laundry would be " guaranteed " a minimum week's pay of fourteen dollars. But a minimum hourly or daily wage would have the same effect for those periods, respectively, since a minimum wage fixed by the day would guarantee the worker a day's wage for every day in which he worked at all — likewise as to an hourly minimum. A wage rate for a given period may not be invalidated simply by labelling it " guaranteed." The question still is as to its reasonableness.

A wage must be fixed with reference to some period of time (we ignore piecework in this discussion), and in plaintiff's case the measuring of wages by any time unit at all would necessarily mean that plaintiff, being required to pay each working employee for at least one such unit, would on some occasions pay one or more workers for time not actually worked. Thus, if the minimum wage rate imposed on plaintiff was two dollars and eighty cents a day instead of fourteen dollars per week, he could still say that he

was being required to pay for something he did not always get, since, according to his testimony, he does not always have a full day's work available for all the girls in his laundry. In this sense, every minimum wage is a " guaranteed " wage for some period of time, and to say that this makes the wage statute or wage order invalid would be to say that all minimum wage legislation is invalid.

Of course, plaintiff cannot be required by law to guarantee work or wages to any one. We read occasionally of a contract between an employer and a union or employees' association whereby the former guarantees to the members of the latter a certain minimum amount of work and wages for some considerable period, such as a year. Probably no statute would be upheld which required any group of employers to carry such a burden. But the order here being attacked has no such result. Actually it compels no employer to hire any one for any period. As Justice HOLMES wrote in his dissenting opinion in *Adkins* v. *Children's Hospital* (261 U. S. 525, 570), a dissenting opinion which apparently states what is now, since the *West Coast* decision, the law of the land: " This statute does not compel anybody to pay anything. It simply forbids employment at rates below those fixed as the minimum requirement of health and right living. It is safe to assume that women will not be employed at even the lowest wages allowed unless they earn them, or unless the employer's business can sustain the burden."

I do not see how Mandatory Order No. 1 fixes a " guaranteed " wage any more than does any other minimum wage provision, be it fixed by the hour, day or week. It follows that the Commissioner did not overstep her statutory authority in this respect.

In arriving at this conclusion I have considered the long history of the various efforts made through legislation and litigation to establish minimum wages for women and minors in this and other States and in the District of Columbia, particularly as to whether weekly wage rates were ever contemplated. It appears that at the time of the passage in our State of article 19 (Laws of 1937, chap. 276) weekly mandated minimum wages were not unknown in other States (see Monthly Labor Review, U. S. Dept. of Labor, Jan. 1938, p. 196 *et seq.*) and that the weekly unit has since been adopted in various States. (Labor Information Bulletin, U. S. Dept. of Labor, March, 1939, p. 8.) In the *Adkins* case (*supra*) one of the wage orders promulgated more than twenty years before the one here in litigation, commanded a weekly minimum of fifteen dollars for laundry workers in the District of Columbia. (See 284 Fed. 613, 614; affd., 261 U. S. 525, 566.) Despite considerable research

I am unable to find in any writings on the subject of minimum wages any mention of any claim that a minimum wage statute in the common form does not permit the establishment of minimum weekly wages; and plaintiff cites no authority pointing in that direction.

I do not hold that the Industrial Commissioner may go to any length in fixing time units or that the fixing of a *yearly* minimum wage, for instance, would be allowable. The Legislature is presumed to know, as we all do, that wages are commonly and conventionally paid by hourly, daily and weekly rates. It must be presumed to have known also, when patterning this statute after the minimum wage statutes of other States, and copying the very language of some of those statutes, that the wage orders issued under those statutes had in some instances provided for weekly wages.

In searching out the legislative intent in this respect we cannot ignore the express declaration of public policy (Labor Law, § 551) which forms part of article 19. There, as in section 550, headed " Factual Background," the Legislature declares that its purpose, among others, is to see to it that women and minors receive " wages sufficient to provide adequate maintenance and to protect the health of women and minors." The Supreme Court has expressly held that this is a proper purpose to be accomplished by a State statute. (*West Coast Hotel Co.* v. *Parrish*, 300 U. S. 379, 398.) Presumably the Legislature intended to provide means adequate to achieve this result, and it must have had in mind that an *hourly* wage, regardless of amount, does not provide adequate maintenance and health protection unless the worker gets that hourly wage for a sufficient number of hours so that the total remuneration amounts to a living wage. I think it not unreasonable to say that the Legislature must have intended that the Commissioner, in appropriate situations, might provide not only for a minimum hourly wage but for a minimum number of hours' pay per week.

There remains the question of reasonableness. Before the Board of Standards and Appeals plaintiff produced testimony that in his laundry at Buffalo he specialized to some extent, during the months from April to December, inclusive, in marine laundry business, that is, taking care of the laundry requirements at Buffalo of the ships which ply the Great Lakes. This type of business, which makes up about thirty per cent of his gross business, is most uncertain as to time and volume, depending on the arrival and departure of the vessels which do not run on any regular or predictable schedule. The rest of his laundry business fluctuates, too, of course, with public demand, as, indeed, does all laundry business and almost all business of every kind. It fairly appears that, at least as presently managed and operated, plaintiff's business

does not at all periods of the year provide sufficient laundry employment for a full forty hours each week. To these facts plaintiff points as substantiating his assertion that Mandatory Order No. 1, as to him, is unconstitutional because it deprives him of his property without compensation by requiring him to pay wages for which he receives no service in return.

As justifying Mandatory Order No. 1, the Commissioner points to the material contained in the record at pages 100, 112, 113, 114, 191, 195, 197, 211, 213, 214 and elsewhere. Briefly summarized, this shows conditions in the laundry business in the State to be about as follows: The median weekly wage for the sample week selected was just over fourteen dollars and the median of hours worked was forty-four per week, while the minimum required for living costs of a woman living alone was $1,192.46 per year, for a woman living as a member of a family group, $1,058.31. A large percentage of women employees received weekly earnings of twelve dollars and less, and the median annual wages paid in the industry were $667.84. None of this testimony seems to be disputed by plaintiff. The Wage Board, in its report (Record, p. 299), after pointing out that on the evidence before it the minimum wage necessary for adequate maintenance would be between twenty-one dollars and twenty-four dollars per week, stated that in view of the condition of the laundry industry and of the wages paid elsewhere for comparable work, it could not impose so high a minimum, but, instead, fixed the fourteen-dollar weekly rate. The record thus shows, without dispute, that the Commissioner and the Board took into account the three factors listed in section 555 of the Labor Law, i. e., amount sufficient for worker's maintenance, value of the services rendered, and wages paid in the State for similar work. Even if I construe the word " may " in this section to mean " must," I still must hold that the Board and Commissioner have complied with all three of the requirements of the section. In view of the findings of fact above summarized I cannot hold that fourteen dollars per week is unreasonable.

It is plain that plaintiff argues not from any alleged failure to investigate the facts and make reasonable findings thereon, nor from any supposed arbitrary or capricious action in fixing the rate, nor from any alleged confiscatory effect on the laundry industry as a whole, of the enforcement of the order. What he is pointing to is the individual hardship which, he says, he will suffer in his own business. Regretable as this special result may be, it is not enough to invalidate an otherwise valid exercise of the State's police power. As Justice CARDOZO said as to a milk price fixed in New York State (*Hegeman Farms Corp.* v. *Baldwin,* 293 U. S.

163, 170): " The appellant would have us say that minimum prices must be changed whenever a particular dealer can show that the effect of the schedule in its application to himself is to deprive him of a profit. This is not enough to subject administrative rulings to revision by the courts. If the designation of a minimum price is within the scope of the police power, expenses or losses made necessary thereby must be borne as an incident, unless the order goes so far beyond the needs of the occasion as to be turned into an act of tyranny." And as the same great jurist said again in *Fox* v. *Standard Oil Co.* (294 U. S. 87, 102): " The operation of a general rule will seldom be the same for every one. If the accidents of trade lead to inequality or hardship, the consequences must be accepted as inherent in government by law instead of government by edict."

I hold Mandatory Order No. 1 valid and direct judgment for the defendant, dismissing the complaint, with costs. Of course, in so doing I express no opinion as to its wisdom, desirability or efficacy for its declared purpose. Since the statute and the order " are seen to have a reasonable relation to a proper legislative purpose, and are neither arbitrary nor discriminatory, the requirements of due process are satisfied, and judicial determination to that effect renders a court *functus officio.*" (*Nebbia* v. *New York*, 291 U. S. 502, 537.) " It is not for the courts to resolve doubts whether the remedy by wage regulation is as efficacious as many believe, or is better than some other, or is better even than the blind operation of uncontrolled economic forces." (Dissenting opinion, *Morehead* v. *Tipaldo*, 298 U. S. 587, 636.)

Submit proposed decision accordingly.